# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 6, 2023        Decided April 23, 2024

No. 22-1308

JOHANNES LAMPRECHT AND LINDA LAMPRECHT,
APPELLANTS

v.

COMMISSIONER OF INTERNAL REVENUE,
APPELLEE

On Appeal from a Decision
of the United States Tax Court

*Lloyd De Vos* argued the cause for appellants. With him on the briefs was *Robert F. Ruyak*.

*Robert J. Branman*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was *Arthur T. Catterall*, Attorney.

Before: WILKINS and WALKER, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: Johannes Lamprecht and his wife Linda are Swiss citizens. In 2006 and 2007, the couple lived

2

in the United States. Each year, they underreported their taxable income by telling the Internal Revenue Service they had no foreign bank accounts. In fact, they had millions in a Swiss bank called UBS.

It looked like the Lamprechts would avoid tax liability on those accounts until the United States served a summons on UBS in 2008. The summons requested information about a class of unknown taxpayers who might have failed to report the existence of taxable income in UBS accounts. *Lamprecht v. Commissioner of Internal Revenue*, T.C. Memo 2022-91, 2022 WL 3923833, at *3 (T.C. Aug. 31, 2022). Because the summons sought information about unknown people, it is called a John Doe Summons.

The United States sued in federal court to enforce the John Doe Summons. But in August 2009, out-of-court agreements made enforcement unnecessary. UBS agreed to give the information to Switzerland, which agreed to give it to the United States. After entering those agreements, the United States dismissed the enforcement suit.

By November 2010, the exchange of information was complete. So the United States formally withdrew the John Doe Summons.

The next month, the Lamprechts amended their tax returns for 2006 and 2007. The new returns reported taxable income in the previously undisclosed UBS accounts, which increased their tax liability by approximately $2.5 million. The couple paid these back taxes, which are not in dispute.

But the IRS wasn't finished with the Lamprechts. It sent them a letter in 2014 saying they would be penalized for their original inaccuracies. In January 2015, the IRS followed up

3

with a formal "notice of deficiency" assessing about $500,000 in penalties.

The couple challenged those penalties in the United States Tax Court, where they raised some (but not all) of the arguments they invoke here. Throughout, they've argued that the IRS didn't follow the tax code's procedures when the IRS first decided to penalize them; that they deserved protections for voluntarily fixing their own mistake before the IRS acted; and that in any event, the statute of limitations for assessing accuracy penalties had run on the two tax years.

The tax court granted summary judgment to the IRS. Except where noted, we review that decision de novo. *See Ryskamp v. Commissioner of Internal Revenue*, 797 F.3d 1142, 1147 (D.C. Cir. 2015).

We affirm.

**I. The IRS Complied with 26 U.S.C. § 6751(b)(1)**

The Lamprechts make three arguments related to a statutory requirement that:

No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate.

26 U.S.C. § 6751(b)(1).

Each argument lacks merit.

## A. It Doesn't Matter When (or Whether) a Supervised Tax Examiner Signs the Approval Required by § 6751(b)(1)

The Lamprechts say that a form approving their tax penalty was signed by a tax examiner *after* it was signed by the examiner's supervisor. According to the couple, that means the IRS has not proven that it complied with § 6751(b)(1). We disagree.

For a tax penalty assessment, "the initial determination of such assessment" must be "personally approved (in writing) by the immediate supervisor of the individual making such determination." 26 U.S.C. § 6751(b)(1).

That's what happened here. For each relevant tax year (2006 and 2007) a tax examiner made the initial determination and then submitted a Form 5345-D to his immediate supervisor. Each form stated an intent to "[a]ssess" an "accuracy penalty" on the Lamprechts. A 762 (2006), 761 (2007). And each form was signed by the supervisor. That is the only signature that the statute requires.

True, each form was also signed by the tax examiner. And the tax examiner may have signed the forms after his supervisor did. But it doesn't matter when or even whether the tax examiner signs — what matters is that a supervisor signed and approved each form. And here, a supervisor did.

## B. The IRS May Use a Form 5345-D to Comply with § 6751(b)(1)

The Lamprechts also argue that the IRS may not use a Form 5345-D to prove that a supervisor complied with § 6751(b)(1). But "[s]ection 6751(b) does not require written

5

supervisory approval on any particular form." *Palmolive Building Investors, LLC v. Commissioner*, 152 T.C. 75, 86 (T.C. 2019). Rather, the statute requires a supervisor to put in writing his approval of a subordinate's initial determination to assess a penalty. And here, the two Forms 5345-D (signed by the supervisor) stated the IRS's intent to "[a]ssess" an "accuracy penalty" on the Lamprechts.

On appeal, the couple argues that regardless of whether a Form 5345-D is ever acceptable, the tax examiners did not fill out *these particular* Forms 5345-D with enough specificity to explain which of several accuracy penalties would be assessed. That is an intriguing argument. But the Lamprechts did not preserve it. In the tax court, they made only a "fleeting and skeletal reference" to it in their reply to their own motion for summary judgment. *Crawford v. Duke*, 867 F.3d 103, 110 (D.C. Cir. 2017). That is too little, too late, and the argument is forfeited. *See Blau v. Commissioner of IRS*, 924 F.3d 1261, 1273 n.3 (D.C. Cir. 2019).[1]

### C. The Tax Court's Refusal to Exclude the Forms 5345-D from Evidence Was Not an Abuse of Discretion

The Lamprechts also asked the tax court to exclude the Forms 5345-D from evidence because the IRS did not produce them until the IRS moved for summary judgment. The tax court denied that request for such an "extreme sanction." *Bonds v. District of Columbia*, 93 F.3d 801, 809 (D.C. Cir. 1996) (cleaned up). We review its decision for an abuse of

---

[1] The tax court (understandably) did not address this argument in its opinion. At that point, the Lamprechts could have moved for reconsideration. *See* Tax Court Rule 161. They didn't. *Cf. Blau*, 924 F.3d at 1267 n.2.

6

discretion. *United States ex rel. Folliard v. Government Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C. Cir. 2014).

There was no abuse of discretion. As the tax court explained, the Lamprechts never expressly asked the IRS to produce the Forms 5345-D. *Lamprecht v. Commissioner of Internal Revenue*, T.C. Memo 2022-91, 2022 WL 3923833, at *11 (T.C. Aug. 31, 2022). Nor did they even make a more general request for forms showing compliance with § 6751(b)(1). *See id.* And the tax court never ordered production of them, contrary to the couple's contentions. *See id.* at *11-12. So the IRS's delay in producing the Forms 5345-D did not require the tax court to exclude them from evidence.

## II. The Lamprechts' Corrected Returns Did Not Protect Them from Penalties

IRS regulations preclude penalties for some taxpayers who correct their previously filed tax returns. But the protection does not apply if taxpayers fail to file new returns before "the IRS serves a summons . . . relating to the tax liability of a person, group, or class that includes the taxpayer . . . with respect to an activity for which the taxpayer claimed any tax benefit on the return directly or indirectly." 26 C.F.R. § 1.6664-2(c)(3)(i)(D)(1). Returns that meet those criteria are called "qualified amended returns." *Id.* at (c)(3) (cleaned up).

Though the Lamprechts filed corrected returns, they were not "qualified amended returns." That's because their corrected returns were filed *after* a John Doe Summons sought information on a class of taxpayers who did exactly what the Lamprechts did — use UBS accounts to underreport their taxable income.

7

They make two arguments to the contrary, but neither is persuasive.

### A. The Summons Was Legal

The Lamprechts do not dispute that they were within the "class" covered by the John Doe Summons; instead, they argue that the summons was illegal. According to them, the United States issued the John Doe Summons only to extend the relevant statute-of-limitations period, so it was not "issued for a legitimate purpose," and thus it didn't prevent them from filing "qualified amended returns." Lamprecht Br. at 41, 43; *see also* 26 C.F.R. § 1.6664-2(c)(3)(i)(D)(1).

We can assume without deciding that the Lamprechts introduced enough evidence to show that extending the statute of limitations was one purpose of the John Doe Summons. But the couple has not shown that it was the *only* purpose. In fact, the Lamprechts' own evidence shows that there was a second purpose.

As they explain, the IRS "wanted to use the [John Doe] Summons as leverage against Switzerland to ensure that UBS met its obligations under the UBS Settlement Agreement." *See Lamprecht v. Commissioner of Internal Revenue*, T.C. Memo 2022-91, 2022 WL 3923833, at *17 (T.C. Aug. 31, 2022) (quoting the Lamprechts). There isn't any dispute among the parties about whether that was a legitimate purpose, and we agree with the tax court that it was. *Cf. id.* at *18 n.25. That ruins the couple's claim that the summons was an "attempt to extend the limitations period for assessment, and for that purpose only." Lamprecht Br. at 46.

8

## B. The Summons Relates to a Benefit Claimed on the Lamprechts' Original Tax Returns

Next, the couple argues that the John Doe Summons was not issued "with respect to an activity for which the [Lamprechts] claimed any tax benefit on the return directly or indirectly." 26 C.F.R. § 1.6664-2(c)(3)(i)(D)(1). If that's right, then the summons does not disqualify their corrected returns from the category of "qualified amended returns" that protects them from penalties.

But (1) there was a "tax benefit" claimed "on the return[s]" originally filed by the Lamprechts (2) "with respect to" an activity covered by the John Doe Summons. *Id.*

First, let's consider the "tax benefit" claimed "on the return[s]." *Id.* Each return asked if the couple had "a financial account in a foreign country, such as a bank account." A 131 (2006), 199 (2007). For 2006, the Lamprechts originally answered: "No." *Id.* at 131. They did the same for 2007. *Id.* at 199. As their corrected returns acknowledge, each no was a misrepresentation. *Id.* at 165 (2006), 232 (2007). And each misrepresentation "on the return" provided a "tax benefit" to the couple because the misrepresentations allowed the Lamprechts to avoid about $2.5 million in taxes. 26 C.F.R. § 1.6664-2(c)(3)(i)(D)(1).

Second, the John Doe Summons covered information "with respect to" the tax benefit of those misrepresentations. *Id.* The summons was issued to secure information about taxpayers who failed to report the existence of UBS bank accounts. *Lamprecht*, 2022 WL 3923833, at *3. That is exactly what the Lamprechts did.

9

### III. The Penalty Assessments Were Not Too Late

The Lamprechts say that the statute of limitations bars the IRS's penalty assessments. *See* 26 U.S.C. § 6501(e)(1)(A).

Usually they'd be correct. The six-year statute-of-limitations period began to run when each original tax return was due in 2007 and 2008. *Id.* And the IRS issued the notice of deficiency penalizing the couple in 2015 — more than six years later.

But the John Doe Summons changes the calculation. If a summons goes unresolved for at least six months, the limitations period "shall be suspended" for "any person with respect to whose liability the summons is issued." 26 U.S.C. § 7609(e)(2). The suspension runs from six months after the summons's service until "the final resolution of such response." *Id.* at (e)(2)(B); *see also* Treasury Regulation § 301.7609-5(d)(1) (the "final resolution" is "the date on which there is a final resolution of the summoned party's response to the summons"); *id.* at (e)(3) (elaborating). If the "final resolution" was in November 2010 — when the summons was withdrawn — then the penalties were timely.

In response, the Lamprechts say that the "final resolution" of the John Doe Summons occurred in August 2009 — or alternatively, that the summons was illegal and never effective.

We cannot endorse either of those arguments.

### A. The Summons Was Not Resolved in August 2009

According to the Lamprechts, the John Doe Summons was resolved when the United States agreed to dismiss the

10

summons's enforcement suit as part of an out-of-court settlement in August 2009.

But the text of that settlement agreement with UBS specifically said that the enforcement suit's dismissal did not resolve the summons. The settlement agreement provided that "in and of itself," the dismissal would "have no effect on the [John Doe] Summons or its enforceability." A 921. If UBS "fail[ed] to timely meet in any material respect any of its obligations under" the settlement agreement, then the IRS was "not obligated to withdraw the [John Doe] Summons." *Id.* at 924. So the parties left the door open for a second suit to enforce the original summons.

In other words, although the 2009 agreement was an important step toward resolution of the summons, no one understood the *enforcement suit's* dismissal to be "in and of itself" the final resolution of the *summons*. *Id.* at 921; *cf.* Winston Churchill, A Speech at the Lord Mayor's Day Luncheon at the Mansion House (Nov. 10, 1942) ("Now this is not the end. It is not even the beginning of the end. But it is, perhaps, the end of the beginning.").

Because the summons survived the enforcement suit's dismissal, the "final resolution" of the summons came after the suit's dismissal in August 2009. And because the Lamprechts have identified no other date for the final resolution, they have not shown that the summons was resolved before its withdrawal in November 2010. That means the summons remained unresolved long enough to extend the statute-of-limitations period beyond the date that the IRS assessed the tax penalties in 2015.

11

**B. The Summons Was Legal (Again)**

The Lamprechts' final argument is one we have already rejected. According to them, the only purpose of the John Doe Summons was to extend the statute-of-limitations period; because that purpose renders the summons illegal, the summons did not extend the statute-of-limitations period.

We have already held that the John Doe Summons had another proper purpose and was legal. Our holding was necessary to the resolution of the Lamprechts' argument about "qualified amended returns." And that holding forecloses this rerun of their argument.[2]

---

[2] The IRS says that when it issues a summons to a bank (like UBS), the bank's customers (like the Lamprechts) cannot retroactively challenge the legality of the summons for statute-of-limitations purposes. But we need not consider whether that bar to litigation exists. Nor must we decide whether that bar would be jurisdictional.

Just as this court "need not resolve difficult questions of its jurisdiction[ ] when a prior judgment of the court forecloses the merits issue," we need not resolve a difficult jurisdictional question if the merits issue is foreclosed by an earlier holding in the same case on the exact same merits issue — so long as we had jurisdiction to make the earlier holding. *See Sherrod v. Breitbart*, 720 F.3d 932, 937 (D.C. Cir. 2013); *cf. Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-102 (1998).

No one disputes our jurisdiction to hold (earlier in this opinion) that the summons had a proper purpose in the "qualified amended returns" context. And the couple expressly concedes that the argument there is identical to their argument here in the statute-of-limitations context. *See* Lamprecht Br. at 40-41. In other words, the outcome here is "foreordained." *Sherrod*, 720 F.3d at 937 (cleaned up).

12

## IV. Conclusion

We are unpersuaded by each of the Lamprechts' arguments. First, the IRS showed in tax court that a supervisor preapproved the Lamprechts' penalties in writing. Second, the couple did not protect themselves from penalties by filing "qualified amended returns." And third, the statute of limitations does not bar the assessment of those penalties.

We affirm the tax court's decision to award summary judgment to the IRS.

*So ordered.*